**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **FRANCIS H. GEORGE,** | ) |
| | ) |
|     **Petitioner,** | ) |
| | ) |
| v. | )    **CIVIL ACTION NO. 5:10-0336** |
| | ) |
| **D. HARMON,** | ) |
| **Warden, FCI Beckley,** | ) |
| | ) |
|     **Respondent.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On March 16, 2010, Petitioner,[1] acting *pro se* and incarcerated at FCI Beckley, located in Beckley, West Virginia, filed an Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody.[2] (Document No. 1.) Petitioner alleges that the BOP is improperly denying him "direct placement to home confinement, as authorized by 18 U.S.C. § 3624(c)(2) and the Second Chance Act, for the final 10% (ten percent) of his term of imprisonment." (Id., pp. 6, 24 - 26.) Petitioner explains that his request for home confinement should be granted because he "does not need the services of a RRC, he is highly educated with a stable home, has the ability to secure some employment, and no need for psychological or drug abuse treatment." (Id., p. 28.) Petitioner alleges that his Case Manager verbally denied his request for home confinement

---

[1] On September 26, 2008, Petitioner pled guilty in the United States District Court for the Western District of Virginia to one count of Wire Fraud in violation of 18 U.S.C. § 1343, and one count of Tax Perjury in violation of 26 U.S.C. § 7206. *United States v. George*, Case No. 5:08-cr-00024 (W.D.Va. Dec. 16, 2008), Document Nos. 9 - 11. On December 16, 2008, the District Court sentenced Petitioner to a 21-month term of imprisonment, to be followed by a three year term of supervised release. *Id.*, Document Nos. 27 - 29. Petitioner did not appeal his conviction or sentence.

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

stating as follows: "(1) I don't do that; (2) We don't do that; (3) If I do that for you, I'd have to do it for everyone; and (4) If I do that, the Community Corrections Manager (CCM) would be very unhappy with me." (Id., p. 24.) Petitioner explains that he then requested a written response and "the Case Manager cited a fifteen-year-old policy statement which stated that inmates may not apply for particular community programs." (Id.) Petitioner further argues that the BOP has failed to comply with the Second Chance Act because "the BOP has: (1) put in place a system that virtually guarantees no RRC placements beyond 6 months; (2) implemented practices that make court challenges to the regulations and policies difficult; (3) promulgated rules that create a strong presumption against change regarding both a 12-month RRC term and 10 percent to a maximum 6-month term in home confinement; (4) ignored the will and intent of Congress regarding the appropriateness of earlier transition to prisoners' home communities; and (5) improperly promulgated those rules and regulations."[3] (Id., pp. 11 - 12.) Petitioner contends that "the BOP has demonstrated a disdainful posture towards the Second Chance Act and Congressional will." (Id., pp. 14 - 22.)

Petitioner states that he should be excused from exhausting his administrative remedies because requiring him to exhaust "would harm the prisoner" and "would be fruitless." (Id., p. 11 -

---

[3] Citing *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008), Petitioner argues that the BOP's "Memorandum for Chief Executive Officers" dated April 14, 2008, regarding "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007"exhibits an improper categorical approach to RRC placement, which is contrary to the clear intent of Congress favoring a presumption of longer RRC placement and significant home confinement. (Document No. 1, pp. 16 - 23.) First, the undersigned finds that the Ninth Circuit's holding is not controlling on this Circuit. *See Virginia Society for Human Life, Inc. v. Federal Election Commission*, 263 F.3d 379, 393 (4th Cir. 2001)(stating that "a federal court of appeals's decision is only binding within its circuit"). Next, the undersigned finds that the BOP's memorandum is not inconsistent with the Second Chance Act where the BOP conduct's an individualized assessment, considering the five factors set forth in Section 3621(b). *See Groomes v. Warden*, 2010 WL 738306, * 7 - 8 (D.S.C. Mar. 3, 2010)(slip copy); *Garrison v. Stansberry*, 2009 WL 1160115, * 4 n. 3 (E.D.Va. Apr. 29, 2009)(slip copy).

12.) Petitioner complains that he was not reviewed for RRC placement until approximately eight months prior to his release date. (Id., pp. 12 - 13.) Petitioner asserts that by failing to review Petitioner for RRC placement 17 to 19 months prior to his release date, "the BOP denied him the statutorily required individual review which constituted a tacit denial of his rights under the SCA." (Id., p. 13.) Petitioner, therefore, argues that "with less than six months left until his statutory release date, requiring Petitioner to complete the remedy process before seeking this Court's intervention would harm him and place the matter beyond the Court's reach." (Id., p. 13.) Specifically, Petitioner explains that "requiring [him] to complete the internal remedy process before bringing the instant action would harm him by denying any possibility of receiving the statutory benefits brought by the SCA." (Id., p. 14.) Plaintiff states that he "could not have begun the process at an earlier date" because "at each periodic Program Review Meeting when Petitioner would bring up the question of home confinement, the Case Manager responded with 'It's not time for that yet.'" (Id.) Plaintiff asserts that "once the request for direct placement to home confinement was denied, the Petitioner took immediate steps to appeal to the Camp Administrator and seek the Court's relief." (Id.) Petitioner, therefore, requests that the Court waive the requirement that he exhaust his administrative remedies and order that Petitioner be transferred to home confinement for the maximum statutory period. (Id., p. 30.)

   In support of his Petition, Petitioner attaches the following Exhibits: (1) Copy of "Memorandum for Chief Executive Officers" dated April 14, 2008, regarding "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007" (Document No. 1-1, pp. 1 - 4.); (2) Copy of "Memorandum from Chief Executive Officers" dated November 14, 2008, regarding "Inmate Requests for Transfer to Residential Reentry Center" (Id., pp. 5 - 7.); (3) Copy of the Change Notice regarding Program Statement 7310.04 (Id., pp. 8 - 27.); (4) Copy of "Day

Two-Working Luncheon Second Chance Act" (Id., pp. 28 - 31.); (5) Copy of Program States 7320.01 (Id., pp. 32 - 40.); and (6) Copy of Petitioner's "Inmate Request to Staff" dated February 12, 2010 (Id., p. 41.)

On May 4, 2010, Petitioner filed an "Addendum to Petition for Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2241." (Document No. 11.) Petitioner complains that the BOP "has made no efforts to open much needed community correction resources" or "taken steps to utilize current technology to expand a home incarceration component, which would generate significant cost savings to an already over-stretched federal budget." (Id., p. 2.) Petitioner states that "no prisoner is being given more than an 180-day RRC placement, and no prisoners are afforded direct placement on home confinement." (Id.) Since there were "no beds" at a RRC facility, Petitioner alleges that the law requires the BOP to place him on home confinement for the final ten percent of his sentence. (Id., p. 4.) Petitioner claims that the "law requires the BOP to utilize community confinement during the final 12 months of a prisoner's sentence" to allow "sufficient duration to provide the greatest likelihood of success, and to enable Petitioner a reasonable opportunity to adjust to and prepare for reentry." (Id., p. 5.) Petitioner, therefore, contends that "[t]he Court must order Petitioner's immediate release to home confinement [because] allowing Petitioner no community corrections time fails the 'sufficient duration' test." (Id.) Petitioner further alleges that BOP staff are engaging in retaliatory acts against Petitioner. (Id.) Specifically, Petitioner contends that staff are retaliating by (1) "mocking misuse of Petitioner's name," (2) "trumping up of institutional charges," (3) "orchestrating findings and disproportionate punishments by the Unit Disciplinary Committees," and (4) "threats of more severe penalties to come if Petitioner does not shut up." (Id., p. 6.) Petitioner states that on April 15, 2010, three institutional charges were issued against him "(1) unsanitary living area; (2) having something unauthorized; and (3) possessing something belonging to another inmate." (Id.) Petitioner

complains that the Unit Disciplinary Committee refused to allow him to make a statement in his defense or review the documentary evidence presented against him. (Id., p. 7.)

On May 13, 2010, Petitioner filed a letter-form Motion for Temporary Injunction requesting that the BOP be required "to immediately refer me to the Community Corrections Manager for placement on home confinement while the Court takes the matter under advisement." (Document No. 12.) On May 28, 2010, Petitioner filed his Motion for Temporary Restraining Order and Preliminary Injunction. (Document No. 13.) Petitioner contends that an injunction should be entered because (1) he has a strong likelihood of success on the merits, (2) he will be irreparably harmed if the injunction is not granted, (3) the BOP will not be harmed by the injunction, and (4) "[a]llowing Petitioner to begin the lengthy process of restoring his medical license two months earlier will enable him to return to serving his community much earlier."(Id., pp. 5 - 10.)

By Order entered on July 27, 2010, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 18.) On August 6, 2010, Respondent filed his Response to the Order to Show Cause. (Document No. 23.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner has failed to exhaust his administrative remedies" (Id., pp. 3 - 5.); and (2) "The BOP has fulfilled it obligation to consider the factors in 18 U.S.C. § 3621(b)" (Id., pp. 5 - 8.). In support of his Response, Respondent attaches the following Exhibits: (1) The Declaration of James Childress (Document No. 23-1, pp. 1 - 3.); (2) A copy of Plaintiff's "Inmate Skills Development Plan" dated October 6, 2009 (Id., pp. 5 - 16.); (3) A copy of an e-mail dated April 23, 2010, from the Community Corrections Manager in Raleigh, NC, informing Mr. Childress that "[a]ll resources have been exhausted in the attempt to find suitable RRC placement for [Petitioner]" (Id., p. 18.); (4) A copy of Petitioner's

5

"Institutional Referral to RRC Placement"(Id., p. 20.); (5) The Declaration of Sharon Wahl (Document No. 23-2, p. 1.); (6) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" Sheet (Id., pp. 3 - 6.); and (7) A copy of Petitioner's "Inmate Discipline Data Chronological Disciplinary Record" (Id., p. 8.)

On August 24, 2010, Petitioner filed his "Reply and Objections to Response to Show Cause." (Document No. 27.) Petitioner objects as follows: (1) The BOP "has actively and wilfully refused to implement the provisions of the Second Chance Act of 2007;" (2) "Petitioner has . . .satisfied any reasonable expectation for exhaustion of administrative remedies;" (3) "Petitioner does indeed have a right to consideration for eligibility for home confinement;" and (4) "Respondent's characterization that Petitioner 'sustained two separate disciplinary action." (Id., pp. 2 - 3.) Petitioner explains that Mr. Childress "orchestrated the issuance of illegal disciplinary sanctions, namely the loss of halfway house time which is not permitted under the Code of Federal Regulations. (Id., p. 3.) Petitioner requests the "return of Petitioner's record to one of clear conduct." (Id.) Petitioner objects to Respondent's claim that his "release area does not have sufficient bed space." (Id., p. 6.) Specifically, Petitioner complains that "the Bureau has done nothing to increase the number of halfway house beds in Petitioner's release area." (Id.) Petitioner argues that he is entitled to "prerelease custody on home confinement, or in a community correctional facility, or RRC." (Id., pp. 7 - 8.)

Petitioner attaches the following Exhibits: (1) A copy of a Declaration from Inmate Christian Herrera stating that Unit Manager Melissa Leslie threatened to improperly take "all of [his] halfway house time" (Document No. 27-1, p. 1.); (2) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated July 24, 2010, challenging "the findings of the UDC held on 3/12/10 for an Incident Report dated 3/9/10" (Document No. 27-2, pp. 1 - 2.); (3) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated April 30, 2010, challenging the sanction imposed by the UDC

(Id., pp. 3 - 4.); (4) A copy of Warden Berkeible's Response dated April 19, 2010, denying Petitioner's Request for Administrative Remedy (Id., p. 5.); (5) A copy of Petitioner's "Request for Administrative Remedy" dated March 31, 2010, challenging the "action taken by the UDC on March 12, 2010" (Id., pp. 6 - 7.); (6) A copy of the "Discussion" portion of Petitioner's Amended Petition (Id., pp. 8 - 15.); (7) A copy of Petitioner's "Central Office Administrative Appeal" dated July 24, 2010, complaining of retaliation and challenging "Incident Report No. 2003272 dated 4/15/10" (Id., pp. 1 - 2.); (8) Petitioner's "Request for Administrative Remedy" dated May 8, 2010, challenging "the actions of the 4/19/10 UDC" (Id., pp. 3 - 4.); (9) A copy of Petitioner's "Incident Report" dated April 15, 2010, charging Petitioner with violating Offense Codes 305, 330, and 400 (Id., p. 5.); (10) A copy of a Declaration from Inmate Glen Ward stating that Petitioner's cell was not "untidy or out of place" on April 15, 2010 (Id., p. 6.); (11) A copy a Declaration from Inmate Terry Dowdell stating Petitioner has been retaliated against after filing his Petition with the Court (Id., pp. 7 - 8.); (12) A copy of Petitioner's "Central Office Administrative Remedy Appeal" appealing the denial of home confinement (Document No. 27-4, pp. 1 - 2.); (13) A copy of 28 C.F.R. § 541.13 (Id., p. 3.); (14) A copy of Regional Director Eichenlaub's Response dated June 14, 2010, denying Petitioner's appeal (Id., p. 4.); (15) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated May 6, 2010, complaining that he was improperly denied home confinement placement (Id., pp. 5 - 6.); (16) A copy of Warden Berkebile's Response dated May 5, 2010, denying Petitioner's Request for Administrative Remedy (Id., p. 7.); (17) A copy of Petitioner's "Request for Administrative Remedy" dated April 27, 2010, complaining that he has been denied home confinement placement (Id., p. 8.); (18) A copy of Petitioner's "Inmate Education Data Transcript" (Document No. 27-5, pp. 1 - 2.); (19) A copy of Petitioner's "Inmate Request to Staff" dated February 12, 2010, requesting CCC, RRC, or home confinement placement (Document No. 27-6.); and (20) A copy of Petitioner's "Inmate

7

Skills Development Plan" dated October 6, 2009 (Document No. 27-7.)

Also on August 24, 2010, Petitioner filed a "Motion to Strike Respondent's Response to Order to Show Cause for Fraud."[4] (Document No. 29.) Petitioner challenges the accuracy of Respondent's Exhibits. (Id., pp. 1 - 2.) Specifically, Petitioner states that the "Inmate Skills Development Plan" filed by Respondent has been altered and "is not a true and accurate copy of Petitioner's Exhibit 7." (Id., p. 2.) Petitioner, therefore, states that the "fraudulent document is the central focus of Respondent's Response to the Order to Show Cause, without the falsified document and perjured testimony, Respondent's Response has no basis." (Id., p. 3.)

## ANALYSIS

**1.     Exhaustion of Administrative Remedies:**

Respondent argues that Petitioner has failed to exhaust his administrative remedies. (Document No. 11, pp. 3 - 5.) Respondent contends that Petitioner was aware that Unit Team recommended a 60-day RRC placement following the Program Review conducted on October 6, 2009. (Id., p. 4.) Respondent states that "[i]nstead of filing an administrative remedy challenging the recommendation of the Unit Team, Petitioner waited 5 months and then filed this action directly with this Court." (Id.) Respondent emphasizes that Petitioner acknowledges that he did not exhaust his administrative remedies. (Id., p. 5.) Accordingly, Respondent asserts that Petitioner "sat on his rights" and "this Court should not excuse his decision to bypass the administrative remedy process." In support, Respondent submits the Declaration of Mr. James Childress, a former Case Manager and

---

[4] By separate Order entered this day, the undersigned has denied Petitioner's Motion to Strike Respondent's Response.

Acting Unit Manager at FCI Beckley.[5] (Document No. 23-1.) Mr. Childress states that in his position he has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Specifically, Mr. Childress states as follows in his Declaration (Id., p. 2.):

> 9.  On October 6, 2009, during Program Review, the Unit Team considered inmate George for prerelease placement. Home confinement was an option considered during Program Review, but based upon criteria in 18 U.S.C. § 3621(b), the team determined that a RRC was the best transition for inmate George and recommended he be placed in RRC for 60 days.
>
> 11. On February 25, 2010, the Unit Team forwarded inmate George's RRC placement recommendation to the Community Corrections Office.
>
> 12. The Community Corrections Office, which is responsible for overseeing contracts for community based programs and for security bed space for federal offenders serving their sentences in prerelease placement, ultimately decides whether to follow the recommendation of the Unit Team.
>
> 13. On April 23, 2010, the Community Corrections Manager noted that all resources had been exhausted in the attempt to find RRC placement for inmate George. The two RRC's in inmate George's release area did not have any bed space available.
>
> 14. Since the time the Unit Team submitted the RRC referral, inmate George has sustained two separate disciplinary actions. These disciplinary actions also indicate that home confinement would not be appropriate option in this case.

In his Petition, Petitioner acknowledges that he failed to exhaust his administrative remedies. (Document Nos. 1.) Petitioner, however, contends that he should be excused from exhausting his administrative remedies because requiring him to exhaust his administrative remedies "would harm the prisoner." (Id., p. 11.) In his Response, Petitioner argues that he has satisfied the Administrative Remedy Requirements by filing "three administrative appeals related to the instant matter."

---

[5] Mr. Childress states that he is currently employed by the BOP as a Unit Manager at FCI McDowell. (Document No. 23-1.)

9

(Document No. 27, p. 11.) Petitioner, however, acknowledges that his first administrative remedy was filed on March 30, 2010. (Id., p. 12.) In the alternative, Petitioner again argues that he should be excused from exhausting his administrative remedies because an attempt to exhaust would be futile and requiring exhaustion would cause him to lose "more than have of the pre-release placement time." (Id., pp. 17 - 18.) Accordingly, Petitioner argues that his Petition should not be dismissed for failure to exhaust. (Id.)

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The Federal Bureau of Prisons has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy

Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Based on a review of the record, the undersigned finds that Petitioner failed to properly exhaust his administrative remedies prior to initiating the above action on March 16, 2010. Petitioner acknowledges that he filed his first administrative remedy on March 30, 2010. (Document No. 27, p. 12.) Petitioner, therefore, failed to fully exhaust his administrative remedies prior to filing the instant action.

Next, the undersigned will consider whether Petitioner should be excused from exhausting his administrative remedies. Exhaustion may be excused under ceratin circumstances, such as by a

showing of futility or irreparable injury. It is clear, however, that exhaustion should not be excused simply because an inmate believes that the length of the exhaustion process will prevent the inmate from receiving a full 12 month RCC placement. See Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy)(finding that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark"); Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Yannucci v. Stansberry, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his [RRC] claims"); and Garrison v. Stansberry, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims"). Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting his administrative remedies and his Petition should be dismissed.[6]

**2.     Title 18 U.S.C. § 3621:**

Notwithstanding the fact that Petitioner failed to exhaust, the undersigned will consider his claims on their merits. Pursuant to Title 18 U.S.C. § 3621, the BOP has authority to designate a

---

[6] To the extent Petitioner is claiming retaliation and challenging his disciplinary actions, the undersigned finds that these claims must be dismissed for failure to exhaust. Additionally, the Court notes that Petitioner may not properly challenge his disciplinary action in *habeas* proceedings as he did not lose good time credit and the length of his sentence was not impacted. *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985)(When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized.)

prisoner's place of imprisonment. Section 3621(b) provides five factors to be considered by the BOP in determining a prisoner's placement:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Title 18 U.S.C. § 3624(c) provides that a prisoner may be granted pre-release custody allowing a prisoner to serve a portion of his sentence in the community, such as home confinement, placement in a community correctional facility, or RRC. See 18 U.S.C. § 3624. Section 3624(c)(1) governs pre-release RRC placements. As amended by the Second Chance Act of 2007, Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

The Second Chance Act required the BOP to issue new regulations to ensure that RRC placements are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). In compliance with the above, the BOP adopted regulations set forth in 28 C.F.R. § 570.20 - .22. Section 520.21 provides that a prisoner's

maximum allowable time in a RRC placement is 12 months. See 28 C.F.R. § 570.21. The regulations, however, do not set any minimum amount of time that a prisoner must spend at a RRC placement. Section 520.22 requires the BOP to make RRC placement decisions "on an individual basis" and to allow placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." See 28 C.F.R. § 570.22. The 12-month RRC period is a statutory maximum and it is not mandatory that prisoners receive 12-months in RRC placement. See 18 U.S.C. § 3624(c); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (4th Cir. 2005)(stating that "the BOP may assign a prisoner to a CCC does not mean that it must").

Based upon a review of the record, the undersigned finds that Petitioner has appropriately been considered for pre-release placement pursuant to Section 3621(b). Respondent filed a declaration from Mr. Childress explaining the process used to determine an pre-release placement. (Document No. 23-1.) Specifically, Mr. Childress states that the Unit Team meets with an inmate during Program Review, which is the process used by the BOP to review inmate progress and to tailor individual programs to meet particular needs of each inmate. (Id., pp. 1 - 2.) During the Program Review held on October 6, 2009, the Unit Team considered Petitioner for prerelease placement on home confinement and at a RRC. (Id., p. 2.) Mr. Childress states that based upon the criteria in 18 U.S.C. § 3621(b), the Unit Team recommended Petitioner to be placed in a RRC for 60 days. (Id.) Mr. Childress further declares that "[h]ome confinement was an option considered during the Program Review, but based upon the criteria in 18 U.S.C. § 3621(b), the team determined that a RRC was the best transition for inmate George." (Id.) Although Petitioner disagrees with the outcome, there is no doubt that Petitioner received an individualized assessment for a pre-release placement using the factors contained in Section 3621(b). See Syrek v. Phillips, 2008 WL 4335494 (N.D.W.Va. Sep. 17, 2008)(finding that "the BOP must consider the § 3621(b) statutory factors" and

14

"cannot rely upon a categorical formula to determine the length of an inmate's CCC placement"); also see Specter v. Director Federal Bureau of Prisons, 2010 WL 883733, * 5 (D.S.C. Mar. 5, 2010)(slip copy)(stating that "[u]nder these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on § 3621(b) factors"); Garrison v. Stansberry, 2009 WL 1160115 at * 5(finding that "the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis"). Therefore, the undersigned finds that the BOP appropriately considered Petitioner for pre-release placement pursuant to Section 3621(b).

### 3. No Liberty Interest in Home Confinement.

Finally, Petitioner contends that he is entitled to pre-release placement on home confinement because a 60-day RRC placement was recommended by the Unit Team and the Community Corrections Manager was unable to find any available bed space in Petitioner's release area. (Document Nos. 1 and 27.) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, to establish a deprivation of a liberty interest with respect to inmate classification, Plaintiff must show either (1) that he has a legitimate entitlement to a certain classification level, or (2) that the denial thereof creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.

Federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial

classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Neither Section 3621(b) nor Section 3624(c) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. See 18 U.S.C. § 3621. See also Trowell v. Beeler, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). The language of Section 3621(b) stating that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility. Furthermore, Title 18 U.S.C. § 3624(c) "does not direct that the BOP must place prisoners in a particular facility, such as a halfway house, to achieve these 'pre-release conditions.' Rather, pursuant to § 3621(b), and subject to the § 3624 limitation periods, the BOP retains discretion to determine whether the pre-release conditions or programs will be provided within a BOP facility or within a community confinement setting." Bost v. Adams, 2006 WL 1674485 (S.D.W.Va. Jun 12, 2006)(finding that petitioner "does not possess a statutorily created liberty interest in release to community confinement"); also see Pennavaria v. Gutierrez, 2008 WL 619197, * 9 (N.D.W.Va. Mar. 4, 2008)(stating that federal prisoners do not have a protected liberty interest in being placed on home confinement, and the BOP has complete and absolute discretion regarding where a prisoner is to be held in pre-release

17

confinement). Accordingly, the undersigned finds that Petitioner does not possess a constitutionally protected interest in placement on home confinement.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody (Document No. 1.), **DENY** Petitioner's Motions for Temporary Injunctions (Document Nos. 12 and 13.) and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d

435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: September 7, 2010.

R. Clarke VanDervort
United States Magistrate Judge